In re KYTE.

(District Court, M. D. Pennsylvania. July 15, 1911.)

No. 1,035.

1. BANKRUPTCY (§ 474*)—DISCHARGE—OPPOSITION—COSTS.

Bankr. Act July 1, 1898, c. 541, § 2, subd. 18, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3420), authorizing the court to tax costs whenever they are allowed by law and to render judgment therefor against the unsuccessful party, or the successful party for cause, or in part against each of the parties, and against estates, in proceedings in bankruptcy, did not authorize the taxation of costs of a successful opposition to a bankrupt's discharge against a bankrupt's estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 474.*]

2. BANKRUPTCY (§ 474*)—DISCHARGE—SUCCESSFUL OPPOSITION—COSTS.

Where a bankrupt was entirely without funds and unable to pay costs of a successful opposition to his discharge, the court would not tax such costs against him.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 474.*]

In Bankruptcy. In the matter of Frank H. Kyte, bankrupt. On exceptions to findings of the referee refusing to tax costs of an opposition to the bankrupt's discharge against bankrupt. Affirmed.

See, also, 182 Fed. 166.

W. H. Goodwin, for trustee.

F. C. Mosier and W. W. Hall, for exceptants.

WITMER, District Judge. The matter in dispute in this case was certified to the court, on petition of certain creditors of the bankrupt, for review of the order of the referee, refusing to allow a bill of costs incurred by the petitioners and others, creditors of the bankrupt, in opposing the bankrupt's discharge, in which they were successful.

[1] Whether the creditors' expenses in opposing the bankrupt's discharge, if successful, should be paid out of the estate of the bankrupt, is the only question to be determined upon this review. The petitioners urge (1) that the referee should have taxed the costs against some one; and (2) that the referee erred in finding that there is no authority for taxing these costs against the estate. As authority for the latter, the court is directed to chapter 2, § 2, subd. 18, of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3420), as follows:

"The court is authorized to tax costs, whenever they are allowed by law, and render judgments therefor against the unsuccessful party, or the successful party for cause, or in part against each of the parties, and against estates, in proceedings in bankruptcy."

The costs for which payment is herein authorized are such as are allowed by this act arising from the bankrupt proceedings in the administration of the estate. The costs claimed are not directed to be paid by the act, and they did not grow out of the administration of the bankrupt's estate.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Administration of an estate has been defined to mean a term applied to denote the management of an estate by a person appointed by authority of law to take charge thereof in place of the legal owner. In a bankrupt court the legal owner of the estate is the bankrupt, who is required to turn over his entire estate to some one to be designated by the creditors and approved by the court, for the purpose of administering the same for the benefit of all the bankrupt's creditors. All acts necessary to be done to accomplish the purpose of converting the assets of the estate and distributing the same to and amongst the creditors legally entitled thereto, as well as any act tending to increase the value of the estate, or in some material manner benefit the estate of the bankrupt, whereby the general interests of all the creditors may be advanced, constitute the administration of the estate. The intent of the law is to administer the estate for the general interests of all the creditors with the least possible expense, and to this end when any proposition of interest, as well as detrimental to the creditors, is made, the law provides that all the creditors shall have notice of a time and place to meet and either assent to or disapprove of such proposition. This undoubtedly is a provision of the law which has been created to throw a safeguard around the interests of the creditors so that the opportunity for abuse or mismanagement of their interests may be reduced to a minimum.

The payment of costs and expenses incurred in a collateral proceeding by a creditor or creditors, without the formal approval of the general creditors, especially when it is not intended by such proceeding to increase the proceeds of the estate, should not be looked upon with favor. Such proceeding is administrative only when it tends to increase the income of the estate or prevent the waste of the estate in hand. In the present case it is not pretended that either of these ends were obtained, but, on the contrary, it was a collateral proceeding instituted by certain of the bankrupt's creditors without the formal assent of the other creditors and without any apparent resultant benefit, either present or future, to, any one; a personal action upon the initiative of those undertaking it, not administrative in character, and a personal triumph. The discharge of the bankrupt is a personal right, and affects only personal rights and obligations, and the bankrupt is entitled to such discharge provided he has done nothing forbidden nor left undone anything required, whereby he may have forfeited such right to a discharge, but it does not affect the administration of his estate. The estate will be administered in the same manner whether or not the bankrupt is discharged, and the administration will be ended when all the dividends are disbursed and the estate is closed. This may occur before or after the question of the bankrupt's discharge has been finally determined; the administration of the estate will neither be retarded nor hastened on account of the discharge; they both proceed in regular course and in different channels. The costs in question not being costs fairly arising from the proceedings in the administration of the estate, it follows that the court is without warrant or justification to order the same to be paid out of the estate. In this view, we are supported by the opinion in Re Brundin (D. C.) 7 Am. Bankr. Rep. 296, 112 Fed. 306, where the court says:

"In my judgment, neither opposing creditors nor bankrupts are entitled to have the costs or expenses of the contest in respect to discharge of the bankrupts paid from the estate administered."

Also in Bragassa v. St. Louis Cycle, 5 Am. Bankr. Rep. 703, 107 Fed. 77, 46 C. C. A. 154, where it is said:

"There is no warrant or authority of law for the court to have allowed $50 for compensation to the referee for services on the hearings before him of the specifications opposing the discharge of the bankrupt. * * * We find that the references were provoked by the bankrupt, and, as the costs were legitimately incurred, we see no other way than to tax the same to the losing party."

There are also other authorities which support the same view.

It also seems that a contrary interpretation of the law would be a dangerous doctrine to establish, as instead of the true intent of the law being carried out, the bankrupt might be submitted to the danger of vexatious opposition, contests multiplied, and estates diminished for no higher reason than to satisfy the whims or prejudices of some individual creditor, or to create fees for ambitious counsel. It would certainly not tend to the economical administration of the estate.

But it is not intended to decide that the courts do not have general power to determine the question of costs in proceedings legally before them. To say that this court would not have the power to dispose of costs in a case legally before it would be to say that the court has no jurisdiction of the subject-matter at issue. It is a well-settled principle of law and has always been recognized that the courts have equitable jurisdiction over the question of costs in any proceeding legally before it, whenever no specific method for the disposition of such costs has been provided by statute. Upon this question, the court in State of Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. 462, 15 L. Ed. 449, says:

"And when the Constitution of the United States conferred equity jurisdiction on this court, it cannot be construed to exclude the power possessed and constantly exercised by every court of equity then known, to use its discretion to award or refuse costs, as its judgment of the right of the case, in that particular, might require. The court entertains no doubt of its power to award costs."

The general rule of law seems to be that costs when allowed are awarded against the unsuccessful party, but the court, in the exercise of its sound discretion in such a matter, may make some other disposition of the costs, whenever the ends of justice would be better served.

[2] The unsuccessful party is the bankrupt, and upon him the costs should ordinarily be visited, but we do not see that any useful purpose would be served by so doing. It does not appear that the bankrupt has any property or means whereby the costs could be realized, if they were taxed against him, and we agree with the contention of exceptants' counsel, as alleged in their brief, that "to tax the costs upon the bankrupt in this instance would, we believe, be a useless undertaking, as the bankrupt would answer that he is unable to pay."

Therefore, for the reasons heretofore given, the order of the referee is affirmed and the exceptions dismissed.