**In re LJAK ASSOCIATES, INC., Debtor.**

**Bankruptcy No. 893–80017–022.**

United States Bankruptcy Court,
E.D. New York,
at Westbury.

March 16, 1994.

[redacted]

[redacted]

[redacted]

[redacted]

Norman Mendelson, Great Neck, NY, for debtor.

Frank, Elmore, Lievens & Van Fleet, P.C. by William L. Van Fleet, II, Houston, TX, Shatzkin & Reiss by Karen Shatzkin, New York City, for United of Omaha Life Ins. Co.

## DECISION AND ORDER

EDWARD J. RYAN, Bankruptcy Judge.

This matter comes before the court on the motion of United of Omaha Life Insurance Company for an order imposing sanctions on the debtor, LJAK Associates, Inc., its principal, Leon Weinstein, and its two attorneys, Matthew Dollinger who served as general counsel to the Weinstein family and as co-counsel in this bankruptcy case, and Norman M. Mendelson LJAK's bankruptcy counsel.

Mendelson was the architect of the bankruptcy case; Dollinger, a criminal lawyer concededly unskilled in bankruptcy, followed his instructions; and the client, understandably, followed what he believed was sound advice from his attorney. Mendelson has consented to be liable for any sanctions imposed.

United urges that LJAK, Weinstein, Dollinger and Mendelson have acted in bad faith by filing this chapter proceeding and by their method of prosecuting it. It contends that respondents conduct caused United the expense of employing counsel in order to obtain relief from the automatic stay of 11 U.S.C. § 362 before it could foreclose on its interest in a piece of real property located in Raleigh, North Carolina.

United has requested $156,407.30 in attorneys' fees and costs. For the reasons stated below, United's motion is granted in part and denied in part.

## BACKGROUND

The property was one of the assets of WWW Associates, Inc., an affiliate of the debtor. Weinstein is the president of WWW and of the debtor. His sons are the other shareholders of both WWW and the debtor. United and one John R. Adams held first and second liens respectively on the property. WWW owns at least five other parcels of real property which are located in New York, New Jersey and South Carolina.

WWW purchased the property in June of 1988 and defaulted on its obligations to United in March of 1992.

Weinstein attempted to negotiate a restructure of WWW's debts with the lienholders. Because Weinstein had proposed to convey an equity participation in the ownership of the property to Adams as part of a restructure of his debt and based upon the advice of Dollinger, Weinstein transferred the property to LJAK, an affiliate of WWW which had been dormant for over four years, but to which WWW had transferred real property in the past. The property was the only significant asset of the debtor at the time it filed its petition.

Weinstein contends he had equity in the property and that he could lease substantially all the office space in the property based upon the interest expressed by two potential tenants. Weinstein hoped the property could service the debt to United because of a proposed exchange of equity for debt with Adams. To the extent that the property was incapable of servicing the debt, Weinstein said he was prepared to meet any shortfall personally.

The transfer of the property to the debtor was accomplished on December 21, 1992, the same day it filed its chapter 11 petition. The petition was filed the day before United was to foreclose on the property.

United proved that it had properly acquired WWW's interest in rents under North Carolina law well before the property was transferred and the petition was filed. Without an interest in rents, the debtor had no funds with which to reorganize, absent agreement with United.

The evidence also showed that Mendelson became ill during the course of this case. He asked Dollinger to make appearances for him and to argue various matters with Mendelson drafting and signing the pleadings. Dollinger agreed.

No plan was filed in this case.

On April 22, 1993, this court granted United's motion for relief from stay and in its Findings of Fact and Conclusions of Law relating to that motion found that the debtor filed its petition (i) primarily out of fear of adverse tax consequences which WWW would suffer upon any foreclosure sale of the property, (ii) without reasonable expectation of successful reorganization, and (iii) for the purpose of forestalling United's foreclosure sale of the property. This court made no specific finding that the proceeding was filed in bad faith.

■ The debtor appealed the order granting relief from the stay. However, the appeal was abandoned by the debtor.

## DISCUSSION

Federal Rule of Bankruptcy Procedure 9011 states in part that:

The signature of an attorney or party constitutes a certification by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Fed. R.Bankr.P. 9011[1].

■ When any one of the four elements of Rule 9011 is violated, the court must impose sanctions. *In re KTMA Acquisition Corp.,* 153 B.R. 238 (Bankr.D.Minn.1993) The court's discretion lies not in its conclusion to sanction but in its determination of what

sanction to apply. *Stuebben v. Gioioso,* 979 F.2d 956 (3d Cir.1992) cites omitted.

■ However, a finding that a bankruptcy petition was filed to delay foreclosure, by itself, is not enough. See *In the Matter of Cohoes Industrial Terminal, Inc.,* 931 F.2d 222 (2d Cir.1991).

As the *Cohoes* court observed there is "a considerable gap between delaying creditors, even secured creditors, on the eve of foreclosure and the concept of abuse of judicial purpose." In *Cohoes* the creditor had failed to move to dismiss the Chapter 11 petition or otherwise to alert the court to the purported frivolity of the petition and thus was estopped from asserting that the petition was improperly filed.

■ The debtor and United were negotiating a restructure of this debt both before and during this proceeding.

United did not request that this case be dismissed *in limine.* Instead, it filed its motion for relief from stay so as to foreclose on its collateral which was granted in due course.

United could have filed its motion for relief or a motion to dismiss earlier in the case, but waited until the end of the exclusivity period, meanwhile negotiating with the debtor.

The respondents did not finally surrender until the debtor decided to give up the appeal. This obstinacy does not rise to the level of abusiveness that requires imposition of sanctions under Rule 9011. The court denies United's motion for sanctions under Bankruptcy Rule 9011 for the activities preceding the motion for sanctions.

■ United also relies on 28 U.S.C. 1927 which states that:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally

---

1. Rule 9011 of the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure are nearly identical and serve a common goal. Thus, decisions under Rule 11 apply when

deciding Rule 9011 motions. See *In re Gioioso,* 979 F.2d 956 (3d Cir.1992); *In re Chisum,* 847 F.2d 597 (9th Cir.1988); *Cinema Services Corp. v. Edbee Corp.,* 774 F.2d 584 (3d Cir.1985).

**12**

the excess costs, expenses, and attorney's fees incurred because of such conduct.

■ The purpose of this rule is to protect the judicial process from abuse, to punish those who have abused it, and to provide relief for the party who has had to contend with the sanctioned party's multiple litigation. See *In the Matter of Cohoes Industrial Terminal, Inc.,* supra.

Mendelson was the attorney of record for the debtor. On his behalf, Dollinger requested an evidentiary hearing on United's motion for sanctions. Mendelson requested depositions of United's attorneys in connection with the motion for sanctions. However, at the instant hearing, Mendelson chose not to participate although he attended.

United's attorneys prepared for the hearing and traveled to New York for it.

Mendelson vexatiously multiplied these proceedings in violation of 28 U.S.C. 1927 by requesting that an evidentiary hearing be held and then capriciously failing to exploit the opportunity to be heard. He is liable to United for its costs and expenses resulting therefrom.

United's papers support an award to it in the sum of $2,100.00.

■ Although United employed three law firms for this case it does not appear just to assess against Mendelson the expense of more than one attorney.

This constitutes the court's findings of fact and conclusions of law.

Let judgment enter accordingly.